F. CHRISTOPHER AUSTIN, ESQ.
Nevada Bar No. 006559
JANET L. ROSALES, ESQ.
Nevada Bar No. 010736
WILLIAM D. SCHULLER, ESQ.
Nevada Bar No. 011271
**KOLESAR & LEATHAM**
400 South Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Telephone: (702) 362-7800
Facsimile: (702) 362-9472
E-Mail:   caustin@klnevada.com
          jrosales@klnevada.com
          wschuller@klnevada.com

Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BRANCH BANKING AND TRUST COMPANY, a North Carolina banking corporation,<br><br>            Plaintiff,<br><br>vs.<br><br>REGENA HOMES, LLC, a Nevada limited liability company, YOEL INY, an individual; NOAM SCHWARTZ, an individual; YOEL INY, Trustee of the Y&T INY FAMILY TRUST dated June 8, 1994; NOAM SCHWARTZ, Trustee of the NOAM SCHWARTZ TRUST dated August 19, 1999; D.M.S.I., L.L.C., a Nevada limited liability company; GREAT AMERICAN CAPITAL, a Nevada corporation; and DOES 1 through 10, inclusive,<br><br>            Defendants. | CASE NO. 2-12-cv-00451-RCJ-GWF<br><br>**ORDER**<br><br>**DEFENDANTS' MOTION TO STAY PROCEEDINGS** |

Defendants REGENA HOMES, LLC; YOEL INY, individually and as Trustee of the Y&T INY FAMILY TRUST dated June 8, 1994, as amended; NOAM SCHWARTZ, individually and as Trustee of the NOAM SCHWARTZ TRUST dated August 19, 1999; D.M.S.I., LLC; and GREAT AMERICAN CAPITAL (collectively "Defendants"), by and

through their attorneys at the law firm of Kolesar & Leatham, respectfully move to stay the instant Action, in its entirety, for the earlier of ninety (90) days or pending the Nevada Supreme Court's resolution of appeals regarding the retroactivity of AB273 legislation and the interpretation of NRS 40.451, NRS 40.459(1)(c) and NRS 40.495.

DATED this 7th day of December, 2012.

KOLESAR & LEATHAM

By /s/ Janet Rosales
F. CHRISTOPHER AUSTIN, ESQ.
Nevada Bar No. 006559
JANET L. ROSALES, ESQ.
Nevada Bar No. 010736
WILLIAM D. SCHULLER, ESQ.
Nevada Bar No. 011271
KOLESAR & LEATHAM
400 South Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145

Attorneys for Defendants

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Shortly after the passage of new legislation ("AB273") which added to and amended Nevada Revised Statutes Chapter 40 as to actions concerning real property and creditor/debtor rights, several Nevada state and federal trial courts issued conflicting decisions regarding the applicability and interpretation of the new legislation. Quickly thereafter, the respective appellant creditors (or appellant debtors) appealed. On October 1, 2012, the Nevada Supreme Court heard oral arguments on three key appeals and on the same day, each of these appeals was submitted for decision. Given the significance of these appeals to hundreds and hundreds of creditors and debtors and its global impact on Nevada's real estate market, it is likely the Nevada Supreme Court will issue a decision in early 2013. In fact, the Nevada Supreme Court has issued stay orders to judges handling AB 273 issues. *Infra*, Exhibit H and Exhibit I.

The issues in this Action are largely a matter of Nevada law and are inextricably related to the pending appeals, implicating NRS 40.451, NRS 40.459(1)(c) and NRS 40.495. The

Nevada Supreme Court's pending decisions will lend crucial direction and clarity to the disputed matters herein. A stay pending these decisions serves the interests of both parties narrowing the issues for trial, minimizing attorneys' fees/costs and clarifying the scope of discovery. Notably, Plaintiff Branch Banking and Trust Company ("BB&T") filed an Amicus Brief in one of the appeals stating that it had a "tremendous interest" and "large stake" in the pending decision because it would impact it's entire portfolio of loans (and which includes the instant Loan). *Infra*, Exhibit C.

This Court has inherent power to grant a stay and based upon the current AB273 landscape, good cause exists for issuance of a stay of the instant Action.

## II. STATEMENT OF FACTS IN SUPPORT OF STAY

### A. Procedural History

On June 8, 2012, BB&T filed an Amended Complaint against Defendants asserting three causes of action, Deficiency, Breach of Guaranty and Breach of the Covenant of Good Faith and Fair Dealing. *See* Docket No. 6. Then, on July 2, 2012, Defendants filed an Answer to the Amended Complaint. *See* Docket No. 24.

A Scheduling Order was issued on August 7, 2012. *See* Docket No. 30. Since such time, the parties have stipulated to an extension of time for discovery and a new Scheduling Order was recently issued on December 4, 2012. *See* Docket No. 36. Given the recent appearance of undersigned counsel, additional time is necessary to, among other matters, retain and designate an expert to calculate the fair market value of the collateral.

However, until the Nevada Supreme Court issues its decisions interpreting AB273, the full scope of the issues that will need to be addressed during discovery in this case cannot be determined, and for that reason, Defendants have brought the instant Motion to Stay. There is no proximate risk of unreasonable delay in the adjudication of this matter.

### B. Key Issues and Defenses

Defendants have asserted numerous affirmative defenses which mirror the issues currently on appeal, including without limitation:

- Defendants state that they are entitled to exoneration under the alleged agreements by virtue of Plaintiffs conduct, including but not limited to, its

breaches and fraud, and the failure of consideration. *See* Docket No. 24, Answer, at p.6, ¶ 4;

- Defendants state that Plaintiffs claims are barred in whole or in part because Plaintiff is not a proper holder in due course. *Id.*, at p. 6, ¶ 5;

- Defendants state that Plaintiffs claims are barred for failure of consideration. *Id.*, at p. 7, ¶ 13;

- Defendants assert all defenses available to them under NRS Chapter 40, including but not limited to, that to the extent Answering Defendants are determined liable to Plaintiff for any deficiency (which is expressly denied), such liability is limited to the amount of consideration Plaintiff paid to acquire the loan at issue pursuant to NRS 40.459. *Id.*, at p. 7-8, ¶ 25;

Defendants' affirmative defenses (in particular, the failure of consideration) are directly at issue in the pending appeals with the Nevada Supreme Court. As discussed in detail below, one trial court held that BB&T's failure to evidence consideration paid for the assignment was fatal to BB&T's claims and thus, summary judgment in favor of Defendants was warranted.

### C. Background of AB273 Appeals

The issues raised by Defendants in their Answer are <u>directly related</u> to matters currently on appeal with the Nevada Supreme Court. The outcome of three different, but related appeals—*Sandpointe Apt.'s LLC v. Dist. Ct.*, Case No. 59507 ("Sandpointe Appeal"), *Branch Banking and Trust Co. v. Nielsen*, Case No. 60256, 59823 and 61092 ("Nielsen Appeal") and *Lavi v. Dist. Ct.*, Case No. 58968 ("Lavi Appeal")[1] (collectively "AB273 Appeals")—each revolve around disputes regarding AB273 and will directly affect adjudication of key issues and defenses in the instant Action.[2] Of particular note, BB&T is directly involved the Nielsen Appeal and Lavi Appeal as the real party in interest of certain real estate loans issued by Colonial Bank and which were thereafter seized by the FDIC and allegedly purchased by BB&T. BB&T sought and obtained amicus status in the third appeal, the Sandpointe Appeal. *Infra*, Exhibit C.

---

[1] For purposes of judicial economy, undersigned does not provide detail regarding the Lavi Appeal. However, the Nevada Supreme Court considered it related to the Sandpointe and Nielsen Appeals and heard oral argument in conjunction with those.

[2] The Nevada Supreme Court provided synopses of the oral arguments for each of the three appeals and which is available at:
http://www.nevadajudiciary.us/index.php/oralarguments/1654-monday-october-1-2012-las-vegas-full-court

1295001.doc (8237-10)                    Page 4 of 12

In 2011, the Nevada Legislature passed AB273 in direct response to the real estate collapse and in efforts to prevent assignee creditors from obtaining windfalls after paying only limited consideration to enforce promissory notes. AB273 served to revise and add numerous provisions in Chapter 40 including, without limitation:

The addition of 40.459(1)(c) which reads:

> If the person seeking the judgment acquired the right to obtain the judgment from a person who previously held that right, the amount by which the **amount of the consideration paid** for that right exceeds the fair market value of the property sold at the time of sale or the amount for which the property was actually sold, whichever is greater, with interest from the date of sale and reasonable costs…

(emphasis added).   AB273 also included the addition of 40.459(2) which reads:

> For the purposes of this section, the "amount of the indebtedness" does not include any amount received by, or payable to, the judgment creditor or beneficiary of the deed of trust pursuant to an **insurance policy** to compensate the judgment creditor or beneficiary for any losses incurred with respect to the property or the default on the debt.

Since these new provisions have been added, both Nevada state trial courts and Nevada federal trial courts, sitting in diversity, have issued inconsistent interpretations of these provisions.

By way of example, on February 23, 2012, Honorable Elissa Cadish issued Amended Findings of Facts, Conclusions of Law and Amended Order on Defendants' Motion for Summary Judgment attached hereto as **Exhibit A** ("Nielsen FFCL").  BB&T (like here) was the purported assignee creditor attempting to enforce a note and guaranty.  Defendants filed a Motion for Summary Judgment asking that BB&T take nothing because BB&T had failed to prove the fair market value of the property and failed to prove the amount of its indebtedness which included in its calculation the amount of consideration paid.

In granting Defendants' summary judgment motion, the Court held, among other matters, that the definition of indebtedness in NRS 40.451 applies to the particular action and served to limit the amount of indebtedness to "the amount of the consideration paid by the lien holder." Nielsen FFCL, at Conclusions ¶ 1.  In addition, the Court found that the newly enacted NRS 40.459(1)(c) applied to the particular action and likewise requires evidence of consideration paid. *Id.*, at ¶ 2.  Further, the Court held that AB273 was not impermissibly retroactive and did not

violate federal or state statute or constitutional law. *Id.*, at ¶¶ 4 to 6. Finally, the Court declined to reach whether the loss sharing agreement constitutes an insurance policy under NRS 40.459(2). *Id.*, at ¶ 7. This decision was appealed by BB&T and is Nevada Supreme Court Case No. 60256.[3]

In a separate matter, BB&T sued Frank Nielsen on a different loan and in that case, Honorable Douglas Smith denied a similar Motion for Summary Judgment brought by the Nielsen Defendants. After the Court's denial of the dispositive Motion, the Nielsen Defendants filed a Petition for Extraordinary Writ Relief as Nevada Supreme Court Case No. 59823.[4] Petitioners requested grant of their Petition because 1.) the newly enacted NRS 40.459(1)(c) is an important issue of law that requires clarification; 2.) the issue is one that presents an urgency and necessity of sufficient magnitude to warrant the Court's consideration, as evidenced by the Nevada Legislature's decision to provide that NRS 40.459 (1)( c) shall be effective immediately; 3.) due to the lack of any controlling authority, there have been inconsistent decisions from the lower courts relative to this issue; and 4.) there have been inconsistent decisions in cases involving these very same parties, and the interests of judicial economy, sound judicial administration, and the desire to avoid inconsistent verdicts on identical facts, militate in favor of writ review. The Nevada Supreme Court granted the petition. Oral argument was heard on October 1, 2012 and the matter has been submitted for decision.

For many of these same reasons, the Nevada Supreme Court took *en banc* review of Honorable Elizabeth Gonzalez' ruling in *CML-NV Sandpointe, LLC v. Sandpointe Apartments, LLC*, Case No. 59507.[5] In *Sandpointe*, Honorable Elizabeth Gonzalez held the opposite of Honorable Elissa Cadish in *Nielsen*. *Compare* **Exhibit A** to Order Denying Defendant's Motion for Partial Summary Judgment and Granting Plaintiff's Countermotion for Partial Summary Judgment attached hereto as **Exhibit B**. Honorable Cadish ruled that the new legislation was

---

[3] The docket and all filings for Case No. 60256 are available at:
http://caseinfo.nvsupremecourt.us/public/caseView.do?csIID=28420.
[4] The docket and all filings for Case No. 59823 are available at:
http://caseinfo.nvsupremecourt.us/public/caseView.do?csIID=27984.
[5] The docket and all filings for Case No. 59507 are available at:
http://caseinfo.nvsupremecourt.us/public/caseView.do?csIID=27667.

applicable to judgments sought following June 2011 while Honorable Gonzalez held such would constitute impermissible retroactive applicable in cases where the operative contract was executed prior to June 2011.

Honorable Gonzalez concluded "the amendments to NRS 40.459 [i.e. subsection (1)(c)] contained in AB 273 are not to be applied retroactively, meaning that these aforementioned amendments only apply to contracts entered into after June 10, 2011." *Id.*, p. 7:15 to 17. In other words, the Court rejected Defendants' assertions that the assignee creditor had to prove the amount of consideration paid for the loan transaction.

Clearly, there is a split among Nevada state trial courts as to the applicability and interpretation of AB 273, leading to inconsistent results.

## III. LEGAL ARGUMENT

### A. Legal Standard

A district court has the inherent power to control its docket, including broad discretion to stay proceedings. *Landis v. N.A. Co.*, 299 U.S. 248, 254–55 (1936); *see also Clinton v. Jones*, 520 U.S. 681, 706 (1997); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005). To be sure, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis,* 299 U.S. at 254. "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.*, at 254-55. "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, ***pending resolution of independent proceedings which bear upon the case.***" *Pate v. DePuy Orthopaedics, Inc.*, 2012 WL 3532780, at *2 (D. Nev. Aug. 14, 2012) (citing to *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979)) (emphasis added).

Accordingly, this Court has the inherent authority to grant Defendants' Motion for Stay because adjudication of the pending AB273 appeals will directly impact this Action.

///

///

**B.     This Action Should be Stayed Until the Nevada Supreme Court Rules on the AB273 Appeals**

As discussed above, Nevada state and federal courts are challenged with crucial questions regarding the applicability and scope of AB273. Unfortunately, there have been inconsistent results. Because of these conflicting trial court decisions, a stay should be entered in this Action.

To-date, BB&T has not proven the consideration paid in its purported assignment of the note and guarantees from the FDIC; rather BB&T seemingly avoids this issue by altogether ignoring NRS 40.459(1)(c). *See* Docket No. 6, First Amended Complaint, at ¶¶ 37 and 41 (citing only to subsections (a) and (b)). The failure to evidence the amount of consideration paid was fatal to BB&T's recovery in the Nielsen action wherein Honorable Cadish granted Defendants' Motion for Summary Judgment in its entirety. *See* **Exhibit A**. Rather than re-litigate these matters herein, it is both prudent and logical to stay this Action to determine if the Nevada Supreme Court will affirm Honorable Cadish's decision. The dispute regarding retroactivity of the new legislation is a threshold question which permeates throughout the instant Action. The threshold question affects the scope of discovery as well as any potential liability and damages. The outcome of the AB273 Appeals will significantly impact both the factual and legal disputes at the heart of this Action. There is simply no reason to re-hash these same issues now, especially since the AB273 Appeals were submitted for decision two and half months ago and decisions should be available in early 2013. This Court could revisit the stay as needed in ninety (90) days.

**C.     BB&T Has Affirmatively Stated its Tremendous Interest in the Pending Nevada Supreme Court Decisions and Thus, BB&T will Benefit From a Stay**

On February 22, 2012, BB&T filed an Amicus Curiae Brief in the *Sandpointe* Appeal which is attached hereto as **Exhibit C**. To obtain amicus status, BB&T underscores its "tremendous interest" and "large stake" in the upcoming AB273 Appeals. *Id.*, at 5:6 and 3:5. A header reads: "BB&T's LARGE STAKE IN THE RESOLUTION OF THIS WRIT." *Id.*, at 3:4-6. BB&T explains to the Nevada Supreme Court how the AB273 Appeals will affect "hundreds of Nevada-based mortgage-backed commercial loans" and more than a dozen

different litigation matters, both those for which foreclosures have been completed and those with pending foreclosures. *Id.*, at 4:17-18; s*ee also* Declaration of Frank LaForge attached hereto as **Exhibit D**, at ¶¶ 3 to 5.

BB&T states, "[T]he Court's decision in this case will affect the hundreds of millions of dollars worth of Nevada-based assets that BB&T inherited from Colonial Bank through the FDIC. Indeed, BB&T has already litigated various issues related to NRS 40.459(1)(c), including retroactivity, in four different cases." *See id.*, at 4:23-26. BB&T continues, "[A]lthough it is not an actual party to this writ, BB&T has a tremendous interest in the Court's resolution of this matter as its ability to recover on hundreds of millions of commercial loans is at stake." *Id.*, at 5:5-7. In other words, BB&T specifically recognizes that the AB273 Appeals do not solely impact those in the appellate process, but also impacts BB&T's entire portfolio of Colonial Bank loans. The loan in dispute here is allegedly one of the loans in the portfolio referenced by BB&T in its Amicus Brief. *See* Docket No. 6, First Amended Complaint, at ¶¶ 22 to 23; *compare* to Exhibit C, at 1:2 to 6; 1; 14 to 17; 3:15 to 18 and 4:13 to 22.

A stay in the instant Action, therefore, is advantageous not solely to Defendants, but also to BB&T. A stay will allow BB&T to avoid yet more re-litigation of disputes regarding the retroactivity of AB273 and "consideration paid" of NRS 40.451 and 40.459(1)(c). Indeed, a stay is entirely consistent with BB&T's Amicus Curiae Brief.

Further, a stay will save BB&T litigation expenses and costs. The wise course is to stay these matters for resolution of the AB273 Appeals. Importantly, a stay is not prejudicial to BB&T, but rather provides BB&T with significant benefits.

**D. The Nevada Supreme Court And Nevada State Trial Courts Have Stayed Litigation Matters Similar to the Instant Action**

As this Court is well aware, diversity cases in federal court are governed by the substantive law of the forum state. *See Ins. Co. of the State of Penn. v. Assoc'd. Int'l. Ins. Co.*, 922 F.2d 516, 520 (9th Cir. 1990). Federal courts, sitting in diversity, are required to "'approximate state law as closely as possible' and are bound by the pronouncements of the state's highest court." *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1092 (9th Cir. 2009)

1  (quoting *Ticknor v. Choice Hotels Int'l., Inc.*, 265 F.3d 931, 939 (9th Cir. 2001)).

2  Notably, both the Nevada Supreme Court as well as several different Nevada state trial courts have used their inherent power under *Landis* to issue complete stays on litigation matters which raise issues similar to the AB273 Appeals. *See e.g. Branch Banking & Trust Co. v. Vernal Towne Ctr. Partners, LLC*, Case No. A617555 (Eighth Judicial District, Dept. XVI, Honorable Timothy Williams), Stay Order dated March 23, 2012 attached hereto as **Exhibit E**; *AmT CADC Venture, LLC adv. Pacific Southwest Investments, et al.*, Case No. A642270 (Eighth Judicial District, Dept. XXIX, Honorable Susan Scann), Stay Order dated August 22, 2012 attached hereto as **Exhibit F**; *CML-NV Grand Day, LLC v. Grand Day*, LLC, Case No. A644054, (Eighth Judicial District, Dept. XXIX, Honorable Susan Scann), Stay Order dated July 26, 2012 attached hereto as **Exhibit G**.

In the instances when a particular Nevada state trial court has denied a party's request for stay pending the outcome of the AB273 decisions, the Nevada Supreme Court issued the requested stays. *See e.g.* Nevada Supreme Court decision, *BH Family Partners Sunset Pad v. Dist. Ct.*, Case No. 61123, Order Granting Stay and Directing Answer dated August 7, 2012 attached hereto as **Exhibit H**; *see also* Nevada Supreme Court decision, *CK West, LLC v. Dist. Ct.*, Order Granting Stay, dated June 22, 2012 attached hereto as **Exhibit I**. In other words, the Nevada Supreme Court clearly recognizes the need to stay trial court litigation during the pendency of its adjudication of the AB273 Appeals.

Defendants respectfully ask this Court to look to the Nevada Supreme Court's issuance of stays as a pronouncement of Nevada state law and to follow suit. *Chalk*, 560 F.3d at 1092.

///
///
///
///
///
///
///

## IV. CONCLUSION

For the reasons stated above, Defendants respectfully request that this Court stay this action for ninety (90) days or pending decision on the AB273 Appeals.

DATED this 7th day of December, 2012.

KOLESAR & LEATHAM

By _/s/ Janet L. Rosales_
F. CHRISTOPHER AUSTIN, ESQ.
Nevada Bar No. 006559
JANET L. ROSALES, ESQ.
Nevada Bar No. 010736
WILLIAM D. SCHULLER, ESQ.
Nevada Bar No. 011271
KOLESAR & LEATHAM
400 South Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145

Attorneys for Defendants

ORDER

IT IS SO ORDERED.

_/s/ Robert C. Jones_
ROBERT C. JONES
Chief Judge
Dated: January 15, 2013.