UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| BRANCH BANKING & TRUST CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 2:12-cv-00451-RCJ-GWF |
| vs. | ) | |
| | ) | |
| REGENA HOMES, LLC et al., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

This case arises out of the default of a commercial loan. Pending before the Court are Plaintiff's Motion for Summary Judgment and Hearing (ECF Nos. 78, 79), Defendant's Motion for Summary Judgment (ECF No. 80), and Defendant's Motion to Certify Questions to the Nevada Supreme Court (ECF No. 107). For the reasons given herein, the Court grants the Motion for Summary Judgment and Hearing (ECF Nos. 78, 79), denies the Motion for Summary Judgment (ECF No. 80), and denies the Motion to Certify Questions to the Nevada Supreme Court (ECF No. 107).

I.  **FACTS AND PROCEDURAL HISTORY**

On September 7, 2005, non-party Colonial Bank, N.A. gave Defendant Regena Homes, LLC a $3,377,000 loan in exchange for a promissory note in that amount (the "Note") and secured by a deed of trust (the "DOT") against certain real property in Clark County Nevada (the

"Property"). (*See* First Am. Compl. ¶¶ 15–16, June 8, 2012, ECF No. 6).[1] The Note was further secured by a guaranty (the "Guaranty"), signed by Defendants Yoel Iny (both in his individual capacity and as trustee for Defendant Y&T Iny Family Trust), Noam Schwartz (both in his individual capacity and as trustee for Defendant Noam Schwartz Trust), D.M.S.I., LLC, and Great American Capital (collectively, "Guarantors"). (*See id.* ¶¶ 4–10, 17).[2] The Note was thrice amended, once to both decrease the debt and extend the maturity date, and twice more to further extend the maturity date. (*Id.* ¶¶ 18, 20–21).[3]

During this time period, Colonial Bank became the successor-in-interest to Colonial Bank, N.A., (*id.* ¶ 19), and on or about August 14, 2009, the State banking Department of the State of Alabama closed Colonial Bank, naming the Federal Deposit Insurance Corp. ("FDIC") as receiver. (*Id.* ¶ 22). On that date, the FDIC assigned its interest in the Note, the DOT, and the Guaranty to Plaintiff Branch Banking & Trust Co. ("BB&T"). (*See id.* ¶¶ 1, 23).[4]

Regena failed to pay Plaintiff the outstanding principal balance of $2,016,109.66 plus interest due under the note on the amended maturity date of December 8, 2009. (*Id.* ¶ 25). Plaintiff sent a demand letter to all Defendants demanding payment under the Note and Guaranty, respectively, but all Defendants refused to pay. (*Id.* ¶¶ 27–28).[5] Plaintiff executed and recorded a Notice of Default and Election to Sell (the "NOD"), and the trustee under the DOT executed and

---

[1] The DOT and Clark County Assessor's public records indicate that the Property is a 4.33-acre lot at the corner of Regena Ave. and Goldfield St. in North Las Vegas, NV that occupies one-fourth of a city block. The fact that the borrower LLC's name matches the name of one of the cross streets of the Property's location tends to indicate that the loan was given to secure the development of residential homes or apartments.

[2] The Note is adduced as Exhibit 1 to the First Amended Complaint ("FAC"); the DOT is adduced as Exhibit 2; and the Guaranty is adduced as Exhibit 3.

[3] The amendments are adduced as Exhibits 4–6 to the FAC.

[4] The Assignment from the FDIC to BB&T is adduced as Exhibit 7 to the FAC.

[5] The demand letter is adduced as Exhibit 8 to the FAC.

1  recorded a Notice of Trustee's Sale (the "NOS"), setting the Property for non-judicial sale on
2  January 17, 2012. (*See id.* ¶¶ 29–30).[6] The trustee postponed the sale on January 17, 2012,
3  rescheduling it for sale on February 28, 2012, on which date Plaintiff purchased the Property for
4  a credit bid of $240,000. (*Id.* ¶ 31).[7] On the date of the trustee's sale, the principal balance on the
5  note was $2,016,109.66 and accrued interest was $54,282.15, for a total indebtedness on the Note
6  of $2,070,391.81. (*Id.* ¶ 32). The fair market value of the Property on the date of sale was
7  $300,000, (*id.* ¶ 33), so the deficiency is $1,770,391, (*see id.* ¶ 34; Nev. Rev. Stat. § 40.459(1)).
8       Plaintiff has sued Defendants in this Court for a deficiency judgment, breach of guaranty,
9  and breach of the implied covenant of good faith and fair dealing. Plaintiff has moved for
10 summary judgment as to Defendants' liability on the breach claims and has requested a hearing
11 to determine the fair market value of the Property pursuant to Nevada Revised Statutes ("NRS")
12 section 40.457. Defendants have moved for defensive summary judgment on all claims based
13 upon Plaintiff's lack of standing at the time it filed the lawsuit and under section 40.459(1)(c).
14 Defendants have also asked the Court to certify two questions to the Nevada Supreme Court.

15 **II.   LEGAL STANDARDS**

16      A court must grant summary judgment when "the movant shows that there is no genuine
17 dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.
18 Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v.*
19 *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there
20 is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A
21 principal purpose of summary judgment is "to isolate and dispose of factually unsupported
22 claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In determining summary
23 judgment, a court uses a burden-shifting scheme:

---

[6] The NOD and NOS are adduced as Exhibits 9 and 10 to the FAC, respectively.

[7] The Trustee's Deed is adduced as Exhibit 11 to the FAC.

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477

U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. ANALYSIS

#### A. Plaintiff's Motion for Summary Judgment

The Court grants Plaintiff's motion for offensive summary judgment as to the breach claims. Plaintiff has adduced evidence (attached to both the Complaint and the present motion) showing Defendants' liability on the Note and Guaranty, respectively, and their refusal to honor those agreements. The relevant Defendants' signatures appear on the Note, DOT, and Guaranty, and Guarantors have each signed consents to each of the amendments to the Note. Defendants have adduced no contrary evidence but complaint that Mr. Harms's declaration in support of the motion is insufficient to authenticate the attached documents. The Court overrules this objection for several reasons. Mr. Harms attests to being a custodian of records for Plaintiff, and the Court is satisfied that he is. The records he authenticates are therefore admissible. Moreover, Defendants do not adduce any evidence tending to put into doubt the authenticity of the records. The residual hearsay exception would therefore apply even if the business records exception did not. Next, as Plaintiff notes in reply, the relevant documents have been either authenticated by the Defendant signatories at their own depositions or provided by Defendants themselves in discovery. And the best evidence rule makes clear that mechanically reproduced copies are "originals" for the purposes of the rule. Defendants' objections to this evidence do not appear to be made in a good faith attempt to challenge the facts but only to delay. Defendants have not adduced a single affidavit or declaration of any signatory to the relevant documents claiming that any of them has been forged or materially altered. That would be the kind of evidence that would cause the Court to consider there to be a genuine issue of material fact as to the authenticity of the operative documents. Defendants adduce evidence relevant only to Mr. Harms's ability to

authenticate Plaintiff's evidence.  But the Court is satisfied that the documents are admissible, and there is no evidence adduced contradicting what they show.  The only genuine dispute of material fact here is the market value of the Property on the date of the foreclosure sale.  As Plaintiff correctly notes, the Court is bound by state law to hold a hearing to determine that amount before awarding a deficiency. *See* Nev. Rev. Stat. § 40.457.  The parties shall contact the Court to arrange a mutually acceptable time for the section 40.457 hearing.

   **B.     Defendants' Motion for Summary Judgment**

The Court denies Defendants' motion for summary judgment under section 40.459(1)(c). Defendants first argue that Plaintiff had no standing to bring its claims when it filed suit on March 16, 2012 and that the lack of standing at that time cannot be cured.  The Court rejects this argument.  The Assignment attached to the FAC shows that Plaintiff had standing to enforce the Note, DOT, and Guaranty in 2009,[8] several years before Plaintiff filed the Complaint. (*See* Assignment, ECF No. 1-7).

Defendants argue that the Assignment was ineffective to transfer an interest in real estate because the real estate is not specifically described therein.  The Assignment refers to all mortgages and security instruments held by Colonial Bank and recorded in the public records of the counties of the State of Nevada. (*See id.*).  The descriptions in those recorded documents are thereby incorporated by reference to the extent such incorporation might be necessary to effect an assignment.  In any case, the assignment of an existing interest in land need not itself specifically describe the land to be valid, so long as the assigned instrument evidencing the interest in the land specifically describes the land.  Assignments of deeds of trust typically identify only the deed of trust, not the land itself.  The Assignment here was, to be sure, a broad, bulk assignment. But breadth and ambiguity are distinct concepts.  An assignment of all recorded interests of the

---

[8]The Assignment purports to be retroactive to August 14, 2009, but even assuming for the sake of argument that the retroactivity clause is ineffective, the Assignment was executed on October 23, 2009 and recorded on November 3, 2009. (*See id.*).

assignor in any land in the State of Nevada is as unambiguous as it is broad. Does the document pertain to a recorded interest in land in Nevada? If so, it has been assigned. And so long as the recorded instrument specifically describes the land, the interest does not fail for lack of specificity. Defendants make much of the fact that certain FDIC officials at their depositions could not specifically recall signing particular documents or having read particular promissory notes before signing allonges thereto. But these officials likely process many hundreds or thousands of such documents, and their inability to specifically recall reading or signing a particular one of them does not tend to impugn the documents' authenticity without some affirmative evidence of forgery or alteration. None of the officials testified as to having any such suspicions, but only as to failures of memory, and Defendants adduce no evidence of forgery or alteration.

Next, Defendants argue that the statute of limitations under section 40.455 bars Plaintiff's claims. Under that section, a plaintiff must apply for a deficiency judgment within six months of the foreclosure sale. The sale here was on February 28, 2012, and Plaintiff filed the Complaint on March 16, 2012, well within the six-month period.

Finally, Defendants argue that their indebtedness under the statute is limited by whatever amount Plaintiff paid the FDIC to obtain the Note and Guaranty. However, this Court has already ruled in another case that the 2011 amendment to section 40.459(1)(c) does not apply to assignments of debt predating the effective date of the statute on June 10, 2011, and that the statute's application to such an assignment would violate the Contract Clause. *See Eagle SPE NV 1, Inc. v. Kiley Ranch Communities*, --- F. Supp. 2d ----, 2014 WL 1199595, at * 3–19 (D. Nev. 2014). The assignment in the present case was made in August 2009, and section 40.459(1)(c) therefore does not apply.

### C. Defendants' Motion to Certify

Defendants ask the Court to certify to the Nevada Supreme Court: (1) how a court should

calculate "the amount of the consideration paid" under section 40.459(1)(c) when a loan was purchased as part of a bulk purchase, not individually; and (2) whether "the amount of the consideration paid" under section 40.459(1)(c) should be adjusted based on subsequent reimbursements to the assignee–creditor pursuant to a loss-sharing agreement.  The Court will not certify these questions, however, because section 40.459(1)(c) does not apply here. *See supra*.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment and Hearing (ECF Nos. 78, 79) are GRANTED.

IT IS FURTHER ORDERED that the Motion for Summary Judgment (ECF No. 80) and the Motion to Certify Questions to the Nevada Supreme Court (ECF No. 107) are DENIED.

IT IS SO ORDERED.

Dated:  This 23rd day of July, 2014.

_____
ROBERT C. JONES
United States District Judge