**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| BRANCH BANKING AND TRUST COMPANY, | Case No. 2:12-CV-00451-APG-GWF |
| Plaintiff, | **ORDER** |
| v. | |
| REGENA HOMES, LLC, *et al.*, | |
| Defendants. | |

The parties dispute whether the defendants are entitled to a jury trial on the amount of the deficiency following a trustee's sale of property that secured payment on a promissory note. Based on the Nevada statutory scheme and the Seventh Amendment, I conclude defendants are entitled to a jury trial on the amount of the debt owed and the price paid at the trustee's sale, but defendants are not entitled to a jury trial on the fair market value of the property at the time of the trustee's sale.

**I.  Background**

The predecessor to plaintiff Branch Banking and Trust Company ("BBT") loaned money to the defendants as evidenced by a promissory note, with the indebtedness being secured by a deed of trust encumbering real property. (Dkt. #1 at 3.)  The loan was personally guaranteed. (*Id.* at 3-4.)  The borrowers defaulted, leading BBT to sell the property through a trustee's sale under the deed of trust. (*Id.* at 5-6.)  BBT then brought suit in this court, asserting claims for breach of the guaranties and breach of the covenant of good faith and fair dealing, and for a deficiency judgment under Nevada Revised Statutes § 40.451, *et seq.* (*Id.* at 7.)

Judge Jones granted summary judgment on defendants' liability for breach of the guaranties and breach of the covenant of good faith and fair dealing, leaving only a determination of the deficiency as the remaining issue to be resolved. (Dkt. #110.)  The case thereafter was

1   transferred to me. (Dkt. #129.)  The parties now dispute whether the defendants are entitled to a

2   jury trial at the deficiency hearing. (Dkt. #127, #130.)

3       **II. Discussion**

4       The parties raise two main issues: (1) whether defendants have a right to a jury trial under

5   the Nevada statutory scheme governing deficiency judgments and (2) if not, whether the Seventh

6   Amendment of the United States Constitution nevertheless requires a jury trial when the action is

7   brought in federal court.

8               **A. Nevada Law**

9       BBT argues that by the statute's plain language, the Nevada Legislature intended the court

10  to make the deficiency findings and enter the deficiency judgment.  BBT also contends the statute

11  did not contemplate juries being involved because the hearing can be held in as little as fifteen

12  days.  BBT notes that the statute refers to a jury elsewhere, thus demonstrating the Legislature

13  was distinguishing between the court and a jury.  Defendants respond that although the statute

14  mentions the "court" holding a hearing, the statute does not specify whether a judge or a jury is

15  the trier of fact.  Additionally, they argue case law often assigns to the jury the question of

16  property's fair market value.

17      The Supreme Court of Nevada has not addressed whether a judge or jury determines a

18  deficiency under Nevada Revised Statutes § 40.451, *et seq.*  I look to Nevada rules of statutory

19  construction to determine the meaning of a Nevada statute. *In re First T.D. & Inv., Inc.*, 253 F.3d

20  520, 527 (9th Cir. 2001).  Under Nevada law, a court should construe a statute to give effect to

21  the legislature's intent. *Richardson Constr., Inc. v. Clark Cnty. Sch. Dist.*, 156 P.3d 21, 23 (Nev.

22  2007).  If the statute's plain language is unambiguous, that language controls. *Id.*  If the statute's

23  language is ambiguous, the Court "must examine the statute in the context of the entire statutory

24  scheme, reason, and public policy to effect a construction that reflects the Legislature's intent."

25  *Id.*

26      Nevada statutorily provides that there be "but one action for the recovery of any debt, or

27  for the enforcement of any right secured by a mortgage or other lien upon real estate." Nev. Rev.

28

Stat. § 40.430(1).  "The purpose behind the one-action rule in Nevada is to prevent harassment of debtors by creditors attempting double recovery by seeking a full money judgment against the debtor and by seeking to recover the real property securing the debt." *McDonald v. D.P. Alexander & Las Vegas Boulevard, LLC*, 123 P.3d 748, 751 (Nev. 2005).  The rule thus requires a creditor to first exhaust the security for the debt or legally forfeit its security interest in the collateral. *Id.*; *Bonicamp v. Vazquez*, 91 P.3d 584, 586 (Nev. 2004).

Nevada requires the one action "be in accordance with the provision of NRS 40.430 to 40.459, inclusive." Nev. Rev. Stat. § 40.430(1).  Pursuant to § 40.455(1), the creditor must apply for a deficiency judgment within six months of the foreclosure or trustee's sale.  The court must hold a hearing on the creditor's application for a deficiency judgment, at which the court takes evidence from the parties concerning the property's fair market value. *Id.* § 40.457(1).  "[A]fter the required hearing, the court shall award a deficiency judgment to the judgment creditor or the beneficiary of the deed of trust if it appears from the sheriff's return or the recital of consideration in the trustee's deed that there is a deficiency of the proceeds of the sale and a balance remaining due. . . ." *Id.* § 40.455(1); *see also id.* § 40.459(1) (providing that following the hearing, "the court shall award a money judgment against the debtor, guarantor or surety who is personally liable for the debt.").  Section 40.459 directs "[t]he court" to "render judgment" in the amount of the difference between (1) the amount of the secured indebtedness and (2) the greater of (a) the property's fair market value at the time of the sale or (b) the actual sale price.[1] *Id.*

By the statute's plain language, the court holds a hearing and renders a deficiency judgment.  There is no reference to a jury, a trial, or a verdict. *See e.g.*, Nev. Rev. Stat., Ch. 6 (referring to "trial jurors"); *id.* § 16.170 (discussing a verdict by a jury and referring separately to the "court"); *id.* § 40.310 (directing that in summary proceedings, issues of fact may be "tried by a jury").  Every reported case involving a deficiency judgment under the statutory scheme has been rendered by a judge, not a jury. *See, e.g.*, *Unruh v. Streight*, 615 P.2d 247, 248 (Nev. 1980); *Tahoe Highlander v. Westside Fed. Sav. & Loan Ass'n*, 588 P.2d 1022, 1024 (Nev. 1979).

---

[1] Section 40.459(1)(c) provides a third potential measure of deficiency which does not apply here.

Defendants do not cite a deficiency case where a jury made the deficiency determination.

Instead, they rely on cases where juries have determined the fair market value of property in other

contexts. *See Nev. Power Co. v. 3 Kids, LLC*, 302 P.3d 1155 (Nev. 2013) (en banc) (eminent

domain); *McCarran Int'l Airport v. Sisolak*, 137 P.3d 1110 (Nev. 2006) (en banc) (regulatory

taking); *Yount v. Bliss Entm't, LLC*, No. 57023, 2012 WL 6195212 (Nev. Dec. 10, 2012) (breach

of contract).  None of these cases involves a deficiency judgment under Chapter 40 following a

foreclosure or trustee's sale.  The practice of Nevada courts supports the conclusion that the

statute provides for deficiency judgments to be heard and determined by a judge, not a jury.

**B.  Seventh Amendment Right to a Jury Trial**

The Seventh Amendment to the United States Constitution provides that "In Suits at

common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury

shall be preserved . . . ."  Whether there is a right to a jury trial in federal court is determined as a

matter of federal law, even in diversity cases and even where the state would not allow a jury trial

in its own courts. *Simler v. Conner*, 372 U.S. 221, 222 (1963); *Byrd v. Blue Ridge Rural Elec. Co-

op., Inc.*, 356 U.S. 525, 535-38 (1958).  In a diversity case, "the substantive dimension of the

claim asserted finds its source in state law . . . but the characterization of that state-created claim

as legal or equitable for purposes of whether a right to jury trial is indicated must be made by

recourse to federal law." *Simler*, 372 U.S. at 222.

The Seventh Amendment preserves jury trials for "Suits at common law," but there is no

jury trial right for equitable actions. *Katchen v. Landy*, 382 U.S. 323, 336-37 (1966).  To

determine whether a particular action is a suit at common law for which a jury trial right exists, I

engage in a two-step process.  First, I compare the action to "18th–century actions brought in the

courts of England prior to the merger of the courts of law and equity" to determine if the action is

legal or equitable. *Wooddell v. Int'l Bhd. of Elec. Workers, Local 71*, 502 U.S. 93, 97 (1991)

(quotation omitted).  Second, I determine whether the remedy sought "is legal or equitable in

nature." *Id.* (quotation omitted).  "The second inquiry is the more important in [the] analysis." *Id.*

Where the two steps lead to conflicting answers, "the equitable nature of the relief is dispositive,

unless Congress lacks the power to so limit the remedies available" for the claim. *Spinelli v. Gaughan*, 12 F.3d 853, 857 (9th Cir. 1993).

### *1. Nature of the Action*

BBT contends that because all that remains following summary judgment is a deficiency hearing, the action is analogous to a foreclosure and related deficiency determination. A judicial foreclosure and the related deficiency determination historically were heard in equity. *See Ohio Cent. R. Co. v. Central Trust Co.*, 133 U.S. 83, 91 (1890); *Shepherd v. Pepper*, 133 U.S. 626, 651-52 (1890) (stating "a decree for a deficiency is a necessary incident of a foreclosure suit in equity"); *F.D.I.C. v. Sextant Dev. Corp.*, 142 F.R.D. 55, 57 (D. Conn. 1992) (collecting cases); *Hyman v. Kelly*, 1865 WL 1023, at *4 (Nev. 1865) (stating "the remedy shall be the equitable one of foreclosure and sale, if the mortgage is relied on").

In contrast, Defendants focus on the claims BBT asserted in the complaint for breach of guaranties and breach of the covenant of good faith and fair dealing. These are classic actions at law. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477 (1962) ("As an action on a debt allegedly due under a contract, it would be difficult to conceive of an action of a more traditionally legal character."); *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 235 F.3d 1184, 1194 (9th Cir. 2000) ("In most instances, a claim seeking money damages for breach of contract is an action at law."). As to the deficiency, defendants argue that if BBT wanted to avoid a jury trial, it should have done a judicial foreclosure. However, BBT sold the property through a trustee's sale, also referred to as a non-judicial foreclosure. Defendants contend that at common law, a trustee's sale and subsequent action on the balance due under the note were actions at law.

BBT's claims for breach of the guaranties and breach of the covenant of good faith and fair dealing are legal claims. Liability on those claims has been resolved through summary judgment, and thus no jury will be needed to determine liability. All that remains is to determine damages, which will be accomplished through the deficiency hearing.

At common law, the holder of a secured promissory note could enforce the debt by "suit on the note, or by a sale of the land," and "[a]t common law the creditor could pursue either

remedy, or both at once." *McMillan v. United Mortg. Co.*, 412 P.2d 604, 605 (Nev. 1966). If the creditor chose to proceed against the property first, the property would be sold through a public sale pursuant to the deed of trust, not through a court-supervised foreclosure. *Id.* After the trustee's sale, the lender could bring an action on the note for the difference between the balance due on the note and the sales price at the trustee's sale. *See First Bank v. Fischer & Frichtel, Inc.*, 364 S.W.3d 216, 220 (Mo. 2012) (en banc) ("Missouri and many of the other states in which the method of measuring deficiencies is governed by the common law traditionally have followed a different approach, however. These states require a debtor to pay as a deficiency the full difference between the debt and the foreclosure sale price. They do not permit a debtor to attack the sufficiency of the foreclosure sale price as part of the deficiency proceeding even if the debtor believes that the foreclosure sale price was inadequate." (footnote and emphasis omitted)); Restatement (Third) of Property: Mortgages § 8.4, Reporters' Note to cmt. a ("Several states continue to adhere to the common-law rule that when a foreclosure sale does not yield at least the amount of the mortgage obligation, the mortgagee is entitled to a deficiency judgment measured by the difference between the foreclosure price and the mortgage obligation. Under this approach, the foreclosure sale price is the conclusive measure of the amount to be applied to the obligation unless the mortgagor can prove that the foreclosure process itself was defective."). There was no consideration of the property's fair market value as there would be in the equitable judicial foreclosure process. If a debtor thought the trustee's sale brought too low a price, he had to appeal to equity and principles of fairness to obtain relief. *See M & I Marshall & Ilsley Bank v. Sunrise Farms Dev.*, 737 F.3d 1198, 1200 (8th Cir. 2013) (applying Missouri law and stating that to "calculate the deficiency under an equitable method, courts must find fraud, unfair dealing or mistake in the trustee's sale." (quotation omitted)).

In 1969, Nevada statutorily subjected trustee's sales to the one action rule and to a deficiency hearing where the fair market value of the property could then be considered. *Holloway v. Barrett*, 487 P.2d 501, 504 (Nev. 1971) (stating that prior to "the enactment of Chapter 327, 1969 Statutes of Nevada, it was proper and appropriate to take a deficiency

judgment for the difference between the amount of the judgment and the price bid, but from and after the effective date of that legislation, it became obligatory upon the court to ascertain the fair and reasonable market value" of the property); Nev. Rev. Stat. § 40.430 (1968) ("If it shall appear from the sheriff's return that there is a deficiency of such proceeds and balance still due to the plaintiff, the judgment shall then be docketed for such balance against the defendant or defendants personally liable for the debts . . . ."). The Nevada Legislature made trustee's sales subject to a fair market valuation because it perceived a problem of sales under deeds of trust generating unfairly low prices, while still allowing the creditor to pursue the debtor for the balance of the loan, resulting in an excessive recovery for the creditor and an excessive burden on the debtor. *See* Mins. of Meeting, Assembly Comm. on Judiciary at 4 (Nev. March 13, 1969); *see also* Restatement (Third) of Property: Mortgages, § 8.4 cmt. a (stating fair market value consideration is "aimed primarily at preventing the unjust enrichment of the mortgagee").

Due to the change in Nevada law, a claim that was purely legal now includes a component that historically was heard in equity. This change arguably makes a judicial foreclosure the closest historical analogy because Nevada statutorily has subjected deficiencies following a trustee's sale to a fair market valuation that historically would have occurred only in equity in conjunction with a judicially-supervised foreclosure. However, the fair market value consideration relates to the nature of the remedy rather than the nature of the claim, as it is a determination of damages, not liability. The most analogous historical claim is breach of contract because the claims BBT asserts are for breach of guaranties and breach of the covenant of good faith and fair dealing. The claims BBT asserts are legal in nature, and the first consideration weighs in favor of finding defendants have a Seventh Amendment right to a jury trial on all issues related to the deficiency.

*2. Nature of the Remedy*

BBT contends that a deficiency hearing is an equitable proceeding incident to a foreclosure. BBT also argues the right to a jury trial does not extend to the remedy phase of a

1  civil trial.  Defendants argue BBT seeks money only, and thus BBT has an adequate remedy at

2  law.

3  Like the first inquiry, I resolve the nature of the remedy by referencing "history to

4  determine whether the particular issues, or analogous ones, were decided by judge or by jury in

5  suits at common law at the time the Seventh Amendment was adopted.  Where history does not

6  provide a clear answer, [I] look to precedent and functional considerations." *City of Monterey v.*

7  *Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 718 (1999).  Generally, a cause of action for

8  recovery of a money judgment is a legal remedy. *Wooddell*, 502 U.S. at 97; *Whitehead v.*

9  *Shattuck*, 138 U.S. 146, 151 (1891).  "It has long been recognized that by the law the jury are

10  judges of the damages."[2] *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 353 (1998)

11  (quotation omitted).  Moreover, a "necessary prerequisite" to an equitable remedy is "the absence

12  of an adequate remedy at law." *Dairy Queen, Inc.*, 369 U.S. at 478.  However, in some instances

13  monetary relief does not constitute a remedy at law. *Chauffeurs, Teamsters & Helpers, Local No.*

14  *391 v. Terry*, 494 U.S. 558, 570 (1990).  Where monetary relief is restitutionary or intertwined

15  with injunctive relief, it may be characterized as equitable, rather than legal.  *Id.* at 570-71.

16  A claim for monetary damages for breach of contract historically has been a matter for the

17  jury to decide.  BBT does not seek restitution or injunctive relief and thus the monetary relief is

18

19  _____

20  [2] BBT contends the Seventh Amendment does not extend to the remedy phase of a civil trial.
   BBT relies on a footnote in *Tull v. United States*:

21  Nothing in the Amendment's language suggests that the right to a jury trial extends to the
   remedy phase of a civil trial.  Instead, the language defines the kind of cases for which

22  jury trial is preserved, namely suits at common law.  Although [w]e have almost no direct
   evidence concerning the intention of the framers of the seventh amendment itself, the

23  historical setting in which the Seventh Amendment was adopted highlighted a controversy
   that was generated . . . by fear that the civil jury itself would be abolished.  We have been

24  presented with no evidence that the Framers meant to extend the right to a jury to the
   remedy phase of a civil trial.

25  481 U.S. 412, 426 n.9 (1987) (internal quotation marks and citation omitted).  However, *Tull* involved a
   federal statute allowing for civil penalties payable to the Government, not damages payable to a private

26  party. *Id.* at 426-27.  The Supreme Court since has distinguished *Tull* on this basis and has indicated that
   the Seventh Amendment extends to the remedy phase of a trial. *See Feltner*, 523 U.S. at 355

27  (distinguishing *Tull* and holding jury trial right extended to a determination of the amount of statutory
   damages under the Copyright Act).

28

not equitable in nature.  BBT has an adequate remedy at law by the recovery of money damages.  Consequently, BBT arguably seeks a legal remedy that historically has been decided by juries.

However, historically, a jury would not have determined fair market value following a foreclosure or a trustee's sale.  In the foreclosure context, the entire proceeding would have been resolved by the court in equity.  In the trustee's sale context, the jury would have determined the amount of the debt owed and the sale price, but the jury would not have determined fair market value because fair market value was not a consideration at common law.  If the debtor thought the trustee's sale did not bring an adequate price, he would have to appeal to equity to set aside the sale.  The Nevada Legislature determined that the existing remedies at law were inadequate when it decided to compel trustee's sales to be subjected to a fair market valuation.  The legislative change was prompted by equitable considerations of fairness and avoiding unjust enrichment.[3]

Based on this authority, I conclude defendants are not entitled to a jury trial on the determination of the property's fair market value because historically fair market value would not have been determined by a jury in the context of either a foreclosure or an action on the note following a trustee's sale.  That is an equitable consideration to be resolved by the court.  The nature of the remedy is more important than the nature of the claim in determining the right to a jury trial, and the nature of a fair market valuation in the context of a deficiency judgment following foreclosure or a trustee's sale is equitable.

However, defendants are entitled to a jury trial on any legal issues remaining in the case, even if those issues are joined in an action with equitable issues.  *Dairy Queen, Inc.*, 369 U.S. at 473.  Historically, the issues of the amount of the debt owed and the sales price garnered at a trustee's sale would have been determined in an action at law for the legal remedy of money damages.  Thus, as to these two issues, defendants are entitled to a jury trial.

---

[3] There is no basis to conclude the Nevada Legislature lacks the authority to limit the available remedies following a trustee's sale. *See Holloway*, 487 P.2d at 505 (citing *Gelfert v. Nat'l City Bank*, 313 U.S. 221 (1941)).

1    This matter is set for trial on the court's April 13, 2015 trial stack.  A jury will be

2   empaneled to decide the amount of the debt owed and the sale price at the trustee's sale.  The

3   court will determine the property's fair market value.

4        **IT IS SO ORDERED.**

5        DATED this 18th day of February, 2015.

6

7   ANDREW P. GORDON
    UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28